NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0249n.06

Case No. 24-5972

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
May 15, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| ADAM NOBLE, JR., | ) | TENNESSEE |
|     Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: GILMAN, DAVIS, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Adam Noble, Jr. appeals the district court's denial of his motion to suppress evidence. Discerning no error, we affirm.

**I.**

In 2022, two officers from the Paris Police Department visited Noble's residence after receiving a tip that a missing child was there. When the officers spoke to Noble, they smelled marijuana coming from the house. After leaving Noble's residence, one of the officers, Jacob Parris, called Jeramye Whitaker, a lieutenant in the Criminal Investigation Division of the Paris Police Department. Parris told Whitaker about their encounter with Noble to "see if [they] had enough for a search warrant." R. 83, PageID 285.

Believing probable cause existed to search the residence for "[m]arijuana, illegal drug proceeds, and any electronic equipment used to store drug related information," Whitaker applied for a search warrant the next day. R. 22-1, PageID 46. His affidavit explained that Parris "could

smell a strong odor of marijuana coming from inside" Noble's residence, and that Parris "know[s] what marijuana smells like due to being a Police Officer with the Paris Police Department and making multiple arrests and convictions for the possession of marijuana." *Id.* A state-court judge issued the search warrant and officers executed it later that same day. During the search, officers found marijuana and other drugs, along with drug paraphernalia, cash, ammunition, and two firearms.

A grand jury charged Noble with two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Noble moved to suppress the evidence found at his residence. The district court denied the motion, finding that the search-warrant affidavit established probable cause for the search. The court also found that the good-faith exception to the exclusionary rule applied even if the affidavit failed to establish probable cause.

Noble pleaded guilty to the felon-in-possession charges but reserved his right to appeal the suppression decision.

## II.

When considering a motion to suppress evidence, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Simmons*, 129 F.4th 382, 386 (6th Cir. 2025). We view the evidence "in the light most likely to support the district court's decision." *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019) (quotation omitted).

## III.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also requires that officers have probable cause to obtain a warrant before searching a house. *Id.*;

*United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). To establish probable cause, a search-warrant affidavit must show a "nexus between the place to be searched and the evidence sought." *Laughton*, 409 F.3d at 747 (quotation omitted). A "nexus" exists when there is "a fair probability that the specific place that officers want to search will contain the specific things that they are looking for." *United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021).

The exclusionary rule prohibits the government from using evidence at trial obtained in violation of the Fourth Amendment unless the good-faith exception applies. *Davis v. United States*, 564 U.S. 229, 231–32 (2011); *United States v. Leon*, 468 U.S. 897, 909, 922 (1984). When the good-faith exception applies, courts will not suppress evidence of a search if "officers act[ed] in objectively reasonable reliance on a search warrant that is subsequently invalidated." *Laughton*, 409 F.3d at 748 (citing *Leon*, 468 U.S. at 918–21).

But the good-faith exception has its limits. As relevant here, it does not apply when an officer executing a search warrant relies on a warrant affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quotation omitted). Such conduct includes relying on a "bare bones" affidavit to perform a search. *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). "[B]are bones affidavits nakedly assume or vaguely conclude, without attempting to demonstrate why, probable cause has been satisfied." *United States v. Sanders*, 106 F.4th 455, 468 (6th Cir. 2024) (en banc). For instance, an affidavit is bare bones if "[i]t provides nothing more than a mere guess that contraband or evidence of a crime would be found"; is "completely devoid of facts" supporting probable cause; or is "so vague as to be conclusory or meaningless." *White*, 874 F.3d at 496 (internal quotation marks and citations omitted).

In sum, a bare-bones affidavit must be one "*so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *Id.* at 497 (citation omitted). Thus, where an affidavit provides even a "modicum of evidence, however slight, showing *some* connection, regardless of how remote it may have been between the criminal activity at issue and location of the search, there exists a minimally sufficient nexus necessitating application of the good faith rule." *Sanders*, 106 F.4th at 469 (internal quotation marks and citation omitted).

Even if the search-warrant affidavit at issue lacked probable cause, the district court did not err in denying Noble's motion to suppress because the good-faith exception applies. The search-warrant affidavit is not bare bones. The Supreme Court has explained that probable cause for a search warrant may exist "[i]f the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance." *Johnson v. United States*, 333 U.S. 10, 13 (1948). Accordingly, we have long held that the smell of marijuana alone can establish probable cause to search a vehicle. *See United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993); *United States v. Stevenson*, 43 F.4th 641, 648 (6th Cir. 2022). And we have noted that "[t]he same may be true when marijuana is smelled within a home." *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir. 2002); *see also United States v. Brooks*, 987 F.3d 593, 600 (6th Cir. 2021) (acknowledging that "our caselaw hold[s] that the smell of marijuana by itself can create probable cause of illegal activity").

The search-warrant affidavit stated that Parris "smell[ed] a strong odor of marijuana coming from inside of" Noble's residence. The affidavit also explained Parris's familiarity with the smell of marijuana from his experience as a police officer. Considering *Johnson* and *Elkins*,

these facts created more than a "modicum of evidence" connecting the house to evidence of criminal activity. *See Sanders*, 106 F.4th at 469 (quotation omitted).

Noble's arguments to the contrary do not convince us otherwise. He first asserts that Whitaker's search-warrant affidavit "was not based upon multiple events" or "verifiable facts," and was instead based on "unsubstantiated hearsay." D. 12 at p.32. But an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Thomas*, 605 F.3d 300, 309 (6th Cir. 2010) (quotation omitted). Moreover, that Parris smelled the marijuana and not Whitaker makes no difference here. "In evaluating whether probable cause exists for issuing a search warrant, a judicial officer may rely on hearsay evidence." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (citation omitted). And because generally "another law enforcement officer is a reliable source[,] . . . no special showing of reliability need be made as part of the probable cause determination." *United States v. Lapsins*, 570 F.3d 758, 764 (6th Cir. 2009) (quotation omitted).

Next, Noble argues that the odor of marijuana alone "did not tie any alleged drug activity to [] Noble's residence," and that the smell of marijuana creates probable cause to search a house only when coupled with other facts indicative of criminal activity. D. 12 at p.32; *see, e.g.*, *United States v. Brooks*, 594 F.3d 488, 494–95 (6th Cir. 2010) (officers had probable cause to search a residence where they smelled marijuana smoke, saw marijuana seeds in an ashtray, and found cash in the defendant's pocket). Yet we have twice held, in unpublished decisions, that the smell of marijuana alone created probable cause to search a residence. *See United States v. Rounsaville*, No. 19-5659, slip op. at 6–7 (6th Cir. Apr. 14, 2020) (order); *United States v. Porter*, 774 F. App'x 978, 979 (6th Cir. 2019). Indeed, as the Supreme Court noted, distinctive odors "might very well be . . . evidence of most persuasive character." *Johnson*, 333 U.S. at 13. We thus have little

difficulty concluding that the search-warrant affidavit—which established both that Parris smelled marijuana coming from the house and that he was qualified to recognize the smell—created a minimally sufficient nexus between the house and evidence of marijuana. *See United States v. Carpenter*, 360 F.3d 591, 593, 596 (6th Cir. 2004) (en banc) (the good-faith exception applied where affidavit identified marijuana plants near the subject residence and a road connecting the two).

Finally, Noble highlights Whitaker's testimony at the suppression hearing that he often secures search warrants based only on the smell of marijuana. Noble argues that, because such warrants are contrary to "the law," Whitaker's conduct was "deliberate, grossly negligent, and recurrent." D. 12 at p.34. But as discussed, our caselaw suggests that the odor of marijuana can create probable cause to search a residence. *See Elkins*, 300 F.3d at 659; *Rounsaville*, slip op. at 6–7. So we are unpersuaded that the officers' reliance on the affidavit here was unreasonable.

At bottom, Whitaker's affidavit did not "entirely fail to connect the evidence of wrongdoing" to Noble's home. *Sanders*, 106 F.4th at 469. As a result, it was objectively reasonable for officers to rely on the warrant.

**IV.**

For these reasons, we **AFFIRM** the district court's judgment.